Jeremy J. Alberts, State Bar No. 273290
jeremy@mytrustedattorney.com
Batkhand Zoljargal, State Bar No. 262918
zola@mytrustedattorney.com
LAW OFFICE OF JEREMY J. ALBERTS
125 W. Amerige Avenue
Fullerton, CA 92832
Telephone: (714) 441-1144
Facsimile: (714) 441-1546

Attorneys for Plaintiff,
ROBERT BURNS and KRISTEN BURNS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

| | |
|---|---|
| ROBERT BURNS, an individual; KRISTEN BURNS, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC Bank USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates, a National Association; OCWEN LOAN SERVICING, LLC, a Delaware Limited Liability Company; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: EDCV 12-01748-JGB(OPx) <br><br> Hon. Jesus G. Bernal <br><br> **VERIFIED COMPLAINT FOR:** <br><br> 1. **NEGLIGENCE** <br> 2. **WRONGFUL FORECLOSURE** <br> 3. **VIOLATION OF 15 U.S.C. 1641(g)** <br><br> **DEMAND FOR JURY TRIAL** |

**COME NOW** Plaintiffs, ROBERT BURNS and KRISTEN BURNS (hereinafter collectively referred to as "Plaintiff") and herein complain and allege as

follows:

## PRELIMINARY STATEMENT

1. Plaintiff instituted this action for actual and compensatory damages, statutory damages, rescission, restitution, punitive damages, attorney fees, and costs of this action against Defendants for violations of the following federal statutes and state law claims:

    a. Negligence

    b. Wrongful Foreclosure and Set Aside Trustee's Sale

    c. Violation of 15 U.S.C. 1641(g)

2. Plaintiff only recently discovered the violations of these laws. As Plaintiff is not familiar with, or have any expertise in, mortgage transactions, Plaintiff did not and could not have reasonably discovered these violations despite due diligence. As such, this action is timely as any and all applicable statutes of limitations were equitably tolled pursuant to state and/or federal law.

## JURISDICTION AND VENUE

3. Jurisdiction of this court is invoked under a federal question pursuant to the federal statutes outlined above and 28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.

6. This Court has jurisdiction to render the declaratory judgment Plaintiffs seek pursuant to 28 U.S.C. § 2201.

7. Venue is proper within this district pursuant to 28 U.S.C. § 1391(b),

because: (i) the real property exists within said district, and/or (ii) the Defendants, and each of them, have done or are doing business within the district.

## PARTIES

8.  Plaintiffs ROBERT BURNS and KRISTEN BURNS (hereinafter collectively "Burns") is an adult resident citizen of San Bernardino County, California over the age of eighteen years, and own real property at 970 S Encina Ave., Rialto, California, 92376 (hereinafter referred to as "Subject Property" or "Property").  Burns obtained a mortgage loan from Fremont Investment and Loan ("Fremont").  Fremont purportedly securitized the loan and claimed to transfer this Plaintiff's Note and Deed of Trust to the ACE Securities Corp, Series 2004-FM2 ("Trust").  HSBC Bank USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates acted as Trustee to that Trust and retained OCWEN LOAN SERVICING, LLC to service these Trust loans.  Defendants retained First American Trustee Servicing Solutions, LLC (hereinafter referred to as "Foreclosing Trustee") to foreclose Plaintiff's Property.

9.  Defendant, HSBC Bank USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates (hereinafter referred to as "Trustee") is a National Association doing business in San Bernardino County, California and, on information and belief, is the Trustee for a pool of securitized mortgages more particularly referenced to as the ACE Securities Corp, Series 2004-FM2 (hereinafter referred to as the "Trust") which are special purpose vehicles or "SPV" in industry parlance, which purchases mortgages and then sells securities backed by the income from the mortgages purchased.

10.  Defendant OCWEN LOAN SERVICING, LLC (hereinafter referred to as "Servicer") is a Delaware Limited Liability Company doing business in San

Bernardino County, California and, on information and belief, is and was at all times material hereto engaged in the business of servicing mortgage loans and were acting as the servicers in the transactions underpinning this cause.

11. Plaintiffs are not aware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Each of said fictitiously named defendants is responsible in some manner for the violations of law herein alleged. Plaintiffs will amend this complaint to add the true names of the fictitiously named Defendants once they are discovered. Whenever reference is made in this complaint to "Defendants," such reference shall include Does 1 through 10.

12. When reference in this complaint is made to any act or transaction of a defendant corporation, company, association, business entity, or partnership, such allegation shall be deemed to mean that said defendant and its owners, officers, directors, agents, employees, or representatives did or authorized such acts while engaged in the management, direction, or control of the affairs of Defendants and while acting within the scope and course of their duties.

13. Whenever in this complaint reference is made to any act of any individual defendant, such allegation shall be deemed to mean that said defendant is and was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform the acts so alleged on behalf of every other defendant herein.

14. Whenever in this complaint reference is made to any act of Defendants, such allegation shall be deemed to mean the act of each defendant acting individually and jointly with the other Defendants named in that cause of action. The defendants are engaged in a joint venture as defined by California law and as such are liable joint and severally for the actions of all members of the joint venture.

## COMMON FACTUAL ALLEGATIONS

17. On or around March 3, 2004, Plaintiff herein executed a Note (hereinafter referred to as "Note") and Deed of Trust (hereinafter referred to as "Deed of Trust") in favor of the Fremont and Mortgage Electronic Registration Systems ("MERS") as a nominal beneficiary thus obtaining mortgage loans on their respective homes.

18. The loan offered to Plaintiff was particularly unsuitable for their needs. However, Fremont knew they would have no liability for Plaintiff's default because at the time of the loan's origination, Fremont securitized and sold their Note to investors by virtue of creating a securitized trust. In effect, the long term liability and risk of default was passed onto investors simultaneously with the origination of the loan.

19. Plaintiff alleges that Trustee is engaged in and has engaged in a pattern and practice of falsifying loan transactions and in particular assignments of mortgages for the purpose of enabling its joint venturers to foreclose on property of unsuspecting or unknowing consumers illegally and without legal standing to foreclose.

20. In the instant case, the Note and Deed of Trust were not assigned to the Trust until December 23, 2009, well past the **Error! Reference source not found.** Closing Date. Another Assignment was executed and recorded on or about January 19, 2012. Defendant's never notified Plaintiff of either transfer according to 15 U.S.C. 1641(g).

21. Furthermore, MERS only had authority of a nominee. At the time MERS executed the first assignment, Fremont was closed and under Federal Bankruptcy protection. Plaintiff is informed and believes and based thereon alleges that Fremont never instructed or authorized MERS to make the assignment and if MERS did, Plaintiff does not believe the transfer was disclosed to the bankruptcy

court or trustee.

22. Plaintiff is informed and believes and based thereon alleges that after Defendants realized their defects in the chain of title resulting from the improper securitization, they implemented a scheme to falsify and backdate documents.

23. Plaintiff further alleges, on information and belief, that Defendants employed and utilized individuals who simply sign thousands of property record documents without any legal or corporate authority and without so much as reviewing the documents they are signing. For instance, Plaintiff believes that employees of Trustee, Servicer, and Foreclosing Trustee, falsely claimed to be agents of Fremont so that they could assign the Note years after the Trust's closing date and after Fremont went out of business. Such persons have come to be known as a "robo-signors."

24. California Commercial Code Section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or Subdivsion (d) of Section 3418.

25. Furthermore, on information and belief, Plaintiff alleges that none of Defendants were present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments.

26. On information and belief, none of Defendants are non-holders in possession of Plaintiff's Note who have rights of the holder.

27. Plaintiff further alleges, on information and belief, that the Trust that claims to own Plaintiff's Note and Deed of Trust has been dismantled due to the

6
**FIRST AMENDED COMPLAINT**

disbursement and receipt of mortgage insurance payouts to Trustee and Certificate holders (including, but not limited to, credit default swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, Trustee has already been paid in full on Plaintiff's debt obligation.

28. Plaintiff allege that Trustee and Servicer, having already benefited from an American taxpayer bailout, seeks another bailout by submitting a blatantly fabricated "Assignment", thereby committing fraud on the Court, and misleading the Plaintiff into believing that Trustee and/or the Trust were Plaintiff's actual creditors and were entitled to foreclose on Plaintiff's home.

29. As an additional attempt to correct deficiencies in the chain of title and in order to effectuate a swift non-judicial foreclosure of Plaintiff's home, Defendants substituted the foreclosure trustee agreed upon in Plaintiff's Deed of Trust for their own trustee. Plaintiffs allege, on information and belief, that Foreclosing Trustee was either a wholly owned subsidiary of Trustee and/or Servicer. By utilizing a non-arm's length trustee, Defendants were able to accomplish the foreclosure without any question as to the authenticity of title or the legality of the sale itself.

30. Provision 24 of the Deed of Trust governs the Substitution of Trustee. It provides in relevant part:

> "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender… This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

31. In violation of Provision 24, and Cal. Civ. Code Section 2934(a), Fremont failed to file a valid Substitution of Trustee, substituting Foreclosing Trustee as the new trustee. Any recorded Substitution is void because it was not

executed by Fremont, or their agents, but instead by MERS or Defendants herein. These defendants were not the current "Lender" at the time of the execution of the Substitution. Trustee claims to have the power to record the substitution but never had a valid assignment of the Deed of Trust. Therefore, the Foreclosing Trustee substituted in was not allowed to act as the trustee under the Deed of Trust.

32. Any substitutions recorded on title by the defendants are fraudulent, and the execution, filing, and recordation of the documents are for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiff's obligation.

33. Plaintiff further alleges that Servicer failed to offer pre-foreclosure loss mitigation as required by the Pooling and Servicing Agreement. The PSA requires that Servicer and Trustee take certain actions to prevent foreclosure before acceleration of the loan and foreclosure. This failure requires that the underlying action seeking foreclosure be dismissed or abated until such time as Servicer and Trustee comply with these requirements.

34. Plaintiff relied on Servicer's and Trustee's misrepresentations and have been damaged in the following ways: (1) Plaintiff has been paying the wrong party for an undetermined amount of time and overpaid in interest that was overcalculated; (2) Plaintiff has suffered damage to credit; (3) the title of Plaintiff's home has been lost through wrongful foreclosure; (4) Plaintiff is facing an imminent eviction from the subject properties; (5) Plaintiff has expended significant funds to cover the cost of attorneys' fees and related costs; (6) Plaintiff's reputations has diminished in the community; and (7) multiple parties may seek to enforce their debt obligations against Plaintiff.

35. Plaintiff contends that all of the wrongful conduct on the part of Defendants complained of herein is either intentional, negligent, or wanton depending upon evidence adduced at trial and that the Plaintiff's claims against

Defendants should serve as a set off or be treated as a counterclaim against any sums owed to any defendant (assuming that any defendant had standing to collect payments).

36.  Plaintiff contends that the foreclosure sale should be enjoined until such time as the Plaintiff's claims are heard and they offset or diminish to some degree any claims that Defendants have on the note.

37.  Plaintiff claims all damages allowed under law for the injuries that have been sustained.

38.  As a result of Defendants' actions, Plaintiff has been injured and harmed in that they have suffered financial loss, damage to their reputation, and have also suffered mental anguish worrying about the status of their home and the possibility of becoming homeless.

39.  Plaintiff alleges that Defendants are equitably estopped from foreclosing because they have unclean hands by virtue of their actions in the origination and servicing of the loans that underlie this case.

40.  Plaintiff alleges that Foreclosing Trustee does not have standing to initiate a foreclosure action against the Subject Property. Perhaps the Fremont had standing to foreclose but no Fremont in this case ever started foreclosure proceedings or even assisted in the foreclosure process. In fact, Plaintiff believes that Fremont herein went out of business before Defendants started foreclosure proceedings against Plaintiff. As grounds therefore, Plaintiff is willing to provide at an evidentiary hearing, proof of said lack of standing for the other defendants to foreclose.

41.  In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks an Order Setting Aside any Notice of Default, and/or Notice of Trustee's Sale, and Declaratory Relief as to whether Trustee has/had any right to foreclose on Plaintiff's Property or collect Plaintiff's mortgage payments.

42. Additionally, Plaintiff's home was wrongfully foreclosed upon after Plaintiff received a valid loan modification from Defendant Ocwen's predecessor, Litton Loan Servicing, LLC (hereinafter "Litton.") Pursuant to a loan modification offer from Litton, Plaintiff and Litton agreed to place a series of fees to be paid at the end of the loan. Upon buying the loan from Litton, and stepping into the shoes of Litton regarding all of their rights and obligations to the loan, Defendant Ocwen immediately asked for the series of fees to be paid up front. Ocwen informed Plaintiff that any payment made would only go toward the fees, and the regular payments would be considered late until the fees were paid.

43. Ocwen violated the terms of the loan modification offered by its predecessor in interest, accepted by Plaintiff and consummated by both parties. Ocwen's violation of its predecessor's promise forced Plaintiff into Default. And then Ocwen immediately proceeded to Default and foreclosure, refusing to discuss or negotiate the matter with Plaintiff. Ocwen negligently and recklessly proceeded to foreclosure in violation of a binding and valid loan modification that Plaintiff had negotiated with Ocwen's predecessor, Litton, and made payments thereto.

## COUNT I

## NEGLIGENCE

**(Against All Defendants)**

85. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

86. As the purported current pecuniary beneficiary of Plaintiff's Note and Deed of Trust, Trustee owed a duty of care to Plaintiff to discharge its contractual duties under the Deed of Trust with reasonable care. Trustee breached its duty of care to Plaintiff when they directed the Foreclosing Trustee to declare a default and initiate foreclosure against Plaintiff.

87. Servicer is vicariously liable for the illegal, fraudulent, and negligent

10
FIRST AMENDED COMPLAINT

42. Additionally, Plaintiff's home was wrongfully foreclosed upon after Plaintiff received a valid loan modification from Defendant Ocwen's predecessor, Litton Loan Servicing, LLC (hereinafter "Litton.") Pursuant to a loan modification offer from Litton, Plaintiff and Litton agreed to place a series of fees to be paid at the end of the loan. Upon buying the loan from Litton, and stepping into the shoes of Litton regarding all of their rights and obligations to the loan, Defendant Ocwen immediately asked for the series of fees to be paid up front. Ocwen informed Plaintiff that any payment made would only go toward the fees, and the regular payments would be considered late until the fees were paid.

43. Ocwen violated the terms of the loan modification offered by its predecessor in interest, accepted by Plaintiff and consummated by both parties. Ocwen's violation of its predecessor's promise forced Plaintiff into Default. And then Ocwen immediately proceeded to Default and foreclosure, refusing to discuss or negotiate the matter with Plaintiff. Ocwen negligently and recklessly proceeded to foreclosure in violation of a binding and valid loan modification that Plaintiff had negotiated with Ocwen's predecessor, Litton, and made payments thereto.

## COUNT I

## NEGLIGENCE

**(Against All Defendants)**

85. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

86. As the purported current pecuniary beneficiary of Plaintiff's Note and Deed of Trust, Trustee owed a duty of care to Plaintiff to discharge its contractual duties under the Deed of Trust with reasonable care. Trustee breached its duty of care to Plaintiff when they directed the Foreclosing Trustee to declare a default and initiate foreclosure against Plaintiff.

87. Servicer is vicariously liable for the illegal, fraudulent, and negligent

conduct of its purported agents, including the Foreclosing Trustee.

88.   Servicer owed Plaintiff an additional fiduciary duty to properly collect payments, distribute payments, debit the Plaintiff's accounts and credit the Plaintiff's accounts.

89.   Servicer also owed the Plaintiff a duty not to assess illegal, unauthorized, or improper charges and to service the mortgage of Plaintiff in a commercially reasonable manner so as to not create a false default or a default not based on fact.

90.   Servicer breached their duty to Plaintiff by not properly crediting the Plaintiff's account or distributing the Plaintiff's payments appropriately and by applying to Plaintiff's account charges which are illegal, unauthorized, or improper and servicing the Plaintiff's loan in a manner that is commercially unreasonable and by creating a false default or exacerbating a default for the purposes of unjustly enriching themselves and other defendants.

91.   As an actual and proximate cause of the reckless breach of duty of care, utter carelessness, and blatant fraud of Defendants as set forth above, Plaintiff has suffered (and continue to suffer) damages.  The defective chain of title has rendered Plaintiff's Property unmarketable and fatally defective, and has further caused Plaintiff to lose saleable title to the Subject Property and as a result, Plaintiff has lost the Property to a wrongful foreclosure.

92.   As an actual and proximate cause of the breach of duty of care and carelessness of the Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, severe emotional distress, including attorneys' fees and costs of bringing suit to challenge said Defendants' right to enforce their debt obligations against them.

## COUNT II

## WRONGFUL FORECLOSURE

### (Against All Defendants)

93. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

94. Servicer and Trustee exercised the power of sale under the Deed of Trust and are foreclosing on Plaintiff's Property.

95. As set forth above, since Trustee's purported status as beneficiaries is void *ab initio*, Trustee does not have the authority to exercise the power of sale within the Deed, and the Trustee cannot initiate foreclosure based upon defaults known to Trustee. Therefore, any foreclosure is void *ab initio*.

96. Foreclosure was initiated by Trustee and/or the Foreclosing Trustee, without privilege and with malice, as the Defendants knew that a "default" has never occurred. As stated, Trustee was not owed any money, the Foreclosing Trustee was not the trustees identified in the Deed of Trust, and Trustee had no pecuniary interest in the loan, and was not a beneficiary of the Note and Deed of Trust. Therefore, despite the fact that said Defendant knew no "default" has occurred, they proceeded with the foreclosure on Plaintiff's Property.

97. Upon information and belief, Plaintiff alleges that the Note and Deed of Trust as the same described above, were improperly pledged or sold to another party, and such sales were not done in accordance with Article 3 or Article 9 of the California Commercial Code and were therefore improper and failed to confer any legally cognizable rights in any party claiming to be a beneficiary of the Note and the Deed of Trust.

98. No true sales of the Note and Deed of Trust, as required per securitization documents, ever actually took place between any of the intermediaries in the securitization chain. Thus, Plaintiff is open to double or triple financial

12
FIRST AMENDED COMPLAINT

jeopardy from unknown claimants.

99. At no point in time did the purported original beneficiaries of the Deed of Trust assign their interests in the Subject Property to any purported holders in due course of the Note or Deed of Trust.

100. In that the Trustee had no interest that was assigned to them, thus, they could not proceed with a foreclosure.

101. On information and belief, at the time Defendants the Trustee and/or the Foreclosing Trustee commenced the foreclosure proceedings, they had no legal or equitable interest in the Note and Deed of Trust, and thus no amount was owed from Plaintiff to Trustee.

## COUNT III

## VIOLATION OF 15 U.S.C. 1641(g)

## (ALL DEFENDANTS KNOWN OR UNKNOWN AND CLAIMING ANY INTEREST IN THE PROPERTY)

### (Against All Defendants)

102. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

103. At all relevant times hereto, HSBC Bank USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates is the trustee for a mortgage backed security that was and is the creditor of the subject note and mortgage. The District Court in *Vogan vs. Wells Fargo*, 2011 U.S. Dist. LEXIS 132944, (E.D. Cal. Nov. 16, 2011) found that the Trustee of a MBS was the Creditor under the 15 U.S.C. § 1641(g). The Court's Opinion states in pertinent part: "the Court finds U.S. Bank as trustee for WFMBS 2005-AR12 Trust may be subject to liability arising from a violation of 15 U.S.C. § 1641(g) and therefore Defendants' motion to dismiss this claim must be denied."

13
FIRST AMENDED COMPLAINT


104. At all relevant times hereto, OCWEN LOAN SERVICING, LLC was and is the servicer of the subject note and mortgage.

105. At some time on or about December 23, 2009, the subject Note and mortgage securing same were sold or otherwise transferred to Trust by virtue of an Assignment of Mortgage and/or an endorsement on the note specifically endorsed without recourse to HSBC Bank USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates. On January 19, 2012, another assignment was made.

106. Defendants did not send Plaintiff notices of the December 23, 2009 and January 19, 2012 sale or transfer of the mortgage loan within 30 days pursuant to TILA § 131(g) [15 U.S.C. § 1651(g)].

107. Pursuant to 15 U.S.C. § 1640(a), Plaintiff is entitled to actual damages, statutory damages, costs, and attorney's fees.

## PRAYER

**WHEREFORE,** Plaintiff prays for damages and other relief as follows:

1. For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,000,000.00, against all Defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3. For an order deeming Plaintiff's Promissory Note is unsecured;

4. For an order compelling Defendants to remove any instrument which does nor could be construed as constituting a cloud upon Plaintiff's title to the Property, including the purported Notice of Default, Notice of Trustee's Sale, Substitution of Trustee, and Assignment of Deed of Trust;

5. For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust, or any other matter based on contract or any of the documents prepared by Defendants,

tendered to and executed by Plaintiff;

6. The Court issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency in this matter;

7. For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff with interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

8. For costs of this suit incurred herein;

9. For reasonable attorneys' fees incurred;

10. Trial by jury; and

11. Such other and further relief as this court shall deem fair equitable and just.

DATED: June 25, 2013                    LAW OFFICE OF JEREMY J. ALBERTS

By: _____
Jeremy J. Alberts
Batkhand Zoljargal
Attorneys for Plaintiffs

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 125 West Amerige Avenue, Fullerton, California 92832.

On June 25, 2013, I served the foregoing document, described as Plaintiff's First Amended Complaint on all interested parties in this action as follows:

RACHEL S. OPATIK (SBN 243140)
HOUSER & ALLISON, APC
Carlsbad Pacific Center 1
701 Palomar Airport Road, Suite 200
Carlsbad, California 92011
ropatik@houser-law.com
*Attorneys for Defendants, Ocwen Loan Servicing, LLC and HSBC Bank USA, National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2004-FM2 Asset Backed Pass-Through Certificates*

[X]  **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

[X]  **(FEDERAL)** I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 25, 2013 at Fullerton, California.

Jesse Vera