JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 12-1748 JGB (OPx)** | Date | August 26, 2013 |
| Title | *Robert Burns & Kristen Burns v. HSBC Bank, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Judgment and Order (1) GRANTING Defendants' Motion to Dismiss (Doc. No. 25) and (2) DISMISSING the First Amended Complaint WITH PREJUDICE (IN CHAMBERS)**

     Plaintiffs Robert Burns and Kristen Burns bring this action against Defendants HSBC Bank, USA ("HSBC") and Ocwen Loan Servicing, LLC ("Ocwen") alleging that Defendants' foreclosure on the real property located at 970 South Encina Drive, Rialto, CA 92376 (the "Property") was improper. Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. No. 25.)  The Court finds this matter suitable for resolution without a hearing pursuant to Local Rule 7-15.  After considering all papers submitted in support of and in opposition to the Motion, the Court GRANTS Defendants' Motion and DISMISSES the First Amended Complaint WITH PREJUDICE.

**I.    BACKGROUND**

     Plaintiffs filed their Complaint against Defendants on October 11, 2012.  (Doc. No. 1.) On November 20, 2012, Defendants filed a motion to dismiss the Complaint (Doc. No. 7), which the Court granted without prejudice on June 10, 2013.  ("Order," Doc. No. 23.)  Pursuant to the Order, Plaintiffs filed a First Amended Complaint on June 25, 2013 asserting three claims for (1) negligence, (2) wrongful foreclosure, and (3) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641.  ("FAC," Doc. No. 24.)

Defendants filed a motion to dismiss the First Amended Complaint on July 9, 2013. ("Motion," Doc. No. 25.)  Defendants also requested judicial notice of seven documents in support of their Motion.  (Doc. Nos. 25-1, 25-2.)[1]  Plaintiffs opposed on August 5, 2013. ("Opp'n," Doc. No. 26.)  Defendants replied on August 13, 2013.  ("Reply," Doc. No. 28.)

The following facts are taken from the FAC and the judicially noticeable documents.  On March 3, 2004, Plaintiffs obtained a mortgage loan on the Property from Fremont Investment and Loan ("Fremont") and Mortgage Electronic Registration Systems ("MERS") acted as a nominal beneficiary.  (FAC ¶¶ 8, 17; RJN, Exh. 1.)  On December 23, 2009, Fremont, through its nominee MERS, assigned the security in the loan to Defendant HSBC as trustee for ACE Securities Corp. ("ACE").  (FAC ¶¶ 8, 20; RJN, Exh. 2.)  The loan was reassigned again on January 19, 2012.  (FAC ¶ 105; RJN, Exh. 3.)  Defendant Ocwen serviced the loan.  (FAC ¶ 8.) On February 14, 2012, notice of default was recorded for the Property.  (RJN, Exh. 4.)  HSBC, as trustee for ACE, substituted Western Progressive, LLC ("Western") as trustee on September 14, 2012.  (RJN, Exh. 5.)[2]  A Notice of Trustee's Sale was recorded on September 14, 2012 (RJN, Exh. 6), and the Property was sold to HSBC on October 16, 2012.  (RJN, Exh. 7.) Plaintiffs contend that Defendants never notified them of the assignments of their property. (FAC ¶ 20.)

Plaintiffs' primary claim is that Defendants and other entities involved with their loan lacked legal standing to foreclosure on the Property, therefore the sale is void.  (FAC ¶ 19.)  In support of this argument, Plaintiffs allege that MERS did not have the authority to sign the assignment of the deed to HSBC because Fremont never instructed or authorized MERS to do so, as it was closed and under federal bankruptcy protection at the time.  (FAC ¶ 21.)  Second, Plaintiffs allege that Defendants used "robo-signors" who falsely claimed to be agents of Fremont so that they could assign the loan after Fremont went out of business.  (FAC ¶ 23.) Third, Fremont failed to file a valid substitution of trustee, substituting Western as the foreclosure trustee, therefore any actions by Western[3] are void.  (FAC ¶ 31.)  Hence, Plaintiffs contend that Western does not have standing to initiate a foreclosure action on the Property. (FAC ¶ 40.)  Plaintiffs aver that only Fremont had standing to foreclose, and all other entities, including Defendants, lacked such standing.  (FAC ¶ 40.)

---

[1] In its June 10, 2013 Order, the Court took judicial notice of six of the documents requested here.  (Order at 2.)  For the same reasons, the Court grants Defendants' request for judicial notice of the seven documents provided.  The additional document, like the others, relates to the Property, contains a recorded document number, and is a public record.  (Id.)

[2] Plaintiffs contend that First American Trustee Servicing Solutions, LLC ("First American") was substituted as trustee to foreclose on the Property.  (FAC ¶ 8.)  However, the judicially noticeable documents reveal that Western was the trustee at the time of foreclosure. (RJN, Exh. 6.)  Plaintiffs appear to admit this error in their opposition.  (See Opp'n at 5.)

[3] As noted above, Plaintiffs contend that First American was the improper foreclosure trustee, contravening the judicially noticeable documents which reveal that Western was the foreclosure trustee.  Accordingly, in this order, the Court assumes that Plaintiffs intended their arguments regarding the foreclosure trustee to refer to Western, and not First American.

In addition to their standing arguments, Plaintiffs make two other claims. First, Plaintiffs allege that Ocwen failed to offer them pre-foreclosure loss mitigation which was required under the Pooling and Servicing Agreement. (FAC ¶ 33.) Second, Plaintiffs claim that they received a valid loan modification from Ocwen's predecessor, Litton Loan Servicing, LLC, but that Ocwen violated the terms of the modification when it obtained the loan from Litton, which forced Plaintiffs into default. (FAC ¶¶ 42-43.)

## II. LEGAL STANDARD[4]

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556). Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

---

[4] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

**I. Negligence**

The elements of a cause of action for negligence are (1) duty, (2) breach of duty, (3) causation, and (4) damages. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001). Defendants argue that they do not owe Plaintiffs a duty; therefore their negligence claim must fail. The Court examines the duties of each Defendant in turn.

**a. HSBC as Lender**

The Court previously dismissed Plaintiffs' negligence claim against HSBC on the ground that no factual allegations demonstrated that "HSBC's action in foreclosing on the property . . . exceed its role as a money lender." (Order at 6.) Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991).

Plaintiffs have once again offered no facts to show that HSBC owed them a duty of care. Of the few acts Plaintiffs allege HSBC committed, none of them were outside the role of lender. Plaintiffs argue that HSBC owes them a duty because it failed to comply with the terms of the Deed of Trust and Cal. Civ. Code § 2934(a) by failing to properly appoint a successor trustee. (Motion at 13-14.) Essentially, Plaintiffs argue that HSBC was not the current lender when Western was substituted as trustee, therefore it did not have authority to execute the substitution. (Id.) Plaintiffs' allegations defeat their argument that HSBC owed them a duty. If, as they contend, HSBC was not their lender, then it could not owe them any duty. See Gutierrez v. U.S. Bank, NA, 2013 WL 399140, *3 (C.D. Cal. 2013) (ordinary lender and trustee have owe no special duty of care to borrower).

Since Plaintiffs have failed to correct the deficiencies noted by the Court in its Order, the Court DISMISSES Plaintiffs' negligence claim against HSBC WITH PREJUDICE.

**b. Ocwen as Servicer**

Like with HSBC, the Court dismissed Plaintiffs' negligence claim against Ocwen for failing to allege sufficient facts to show it owed a duty to Plaintiffs. (Order at 6.) As the Court discussed in its prior Order, "loan servicers do not owe a duty to the borrowers of the loans they service." Osei v. GMAC Mortg., 2010 WL 2557485, at *4 (E.D. Cal. June 21, 2010); see also Juarez v. Suntrust Mortg., Inc., 2013 WL 1983111, at *11 (E.D. Cal. May 13, 2013); Dinh v.

Citibank, N.A., 2013 WL 80150, at *4-5 (C.D. Cal. Jan. 7, 2013) (finding that the lender and loan servicer did not owe a duty to the borrower).

Despite this clear statement of the law, Plaintiffs argue that Ocwen, their loan servicer, owes them a duty because it refused to abide by a loan modification that Plaintiffs entered into with a prior servicer, Litton. (Opp'n at 11-12.)  Plaintiffs premise this argument on the contention that a lender may owe a duty of care sounding in negligence to a borrower when the lender offers the borrower an opportunity for a loan modification.  (Id. at 12.)  However, here, none of the Defendants offered Plaintiffs a loan modification; instead, a non-party allegedly offered and consummated the modification.  Plaintiffs cite no authority to support the conclusion that a subsequent servicer or lender owes a duty to a borrower to non-negligently continue the terms of a predecessor's loan modification agreement.  Cf. Mueller v. Bank of Am., N.A., No. 12cv0074 WQH–BLM, 2012 WL 3134243, at *3 (S.D. Cal. Aug. 1, 2012) (rejecting claim that bank "mishandled" a loan modification and "misinformed" the borrower about it).

Once again, Plaintiffs failed to correct the errors identified in the prior Order. Accordingly, the Court finds that Plaintiffs are unable to demonstrate that Ocwen owes them a duty of care and the negligence claim must be DISMISSED WITH PREJUDICE.

## II.  Wrongful Foreclosure

The Court's June 10, 2013 Order dismissed the wrongful foreclosure claim on at least two distinct grounds: Plaintiffs lack standing to challenge the Pooling and Servicing Agreement ("PSA") and Plaintiffs failed to demonstrate that they were prejudiced or harmed by the sale. (Order at 8-10.)[5]  These deficiencies persist in the FAC.  Plaintiffs still improperly rely on the PSA for at least part of their wrongful foreclosure claim (FAC ¶ 33) and Plaintiffs' allegations regarding harm are vague and conclusory (FAC ¶ 34).

In addition to these failings, a more basic principle requires dismissal of this claim.  All of Plaintiffs' arguments concerning wrongful foreclosure rest on the theory that at the time of foreclosure, Western did not have standing to foreclose because the prior assignments of the loan were improper.  This argument hinges on the contention that only Fremont has an interest in the loan because MERS, as nominee for Fremont, improperly signed the initial assignment of the loan to HSBC.  Plaintiffs contend that since this original transfer failed, all subsequent assignments and substitutions were without legal authority.  As discussed below, Plaintiffs' argument fails because the original assignment by MERS was proper.

There is no cause of action to determine whether an entity has been authorized to foreclose unless the plaintiff can show that the foreclosing entity received no valid assignment in

---

[5] The Court also recognizes that the additional document provided in Defendants' RJN, namely the assignment of the deed of trust from Fremont to HSBC (RJN, Exh. 2), cures the defect in the chain of title identified in the Court's prior Order.  (See Order at 9.)  Therefore, Plaintiffs' failure to allege tender serves as an additional basis to dismiss the wrongful foreclosure claim.  (Order at 8-9.)

any way and therefore lacked any possible authority to foreclose.  See Robinson v. Countrywide Home Loans, Inc., 199 Cal. App. 4th 42, 46 (2011); Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 271–72 (2011); Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1155 (2011).  Plaintiffs argue that MERS did not have the right to receive loan payments or assign a beneficial interest in the loan to HSBC because it was designated in the Deed of Trust as the "beneficiary of this Security Instrument" acting "solely as a nominee for Lender and Lender's successors and assigns."  (RJN, Ex. A at 2.)  However, in the Deed of Trust, Plaintiffs agreed that, as beneficiary, MERS had the "right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."  (Id. at 3.)  Therefore, Plaintiffs cannot complain that MERS lacked authority to act on Fremont's behalf to assign the original lender's interest to HSBC.  See Herrera v. Fed. Nat'l Mortg. Ass'n, 205 Cal. App. 4th 1495, 1505 (2012) (rejecting challenge to assignment from MERS to a new beneficiary because the Deed of Trust provided that "MERS had the right to exercise all rights of the lender, including foreclosing on and selling plaintiffs' property."); see also Tall v. Mortg. Elec. Registration Sys., Inc., No. C 12-5348 WHA, 2012 WL 6680183, at *2–3 (N.D. Cal. Dec. 21, 2012) ("[S]ince MERS had the right to initiate foreclosure proceedings under plaintiffs' deed of trust, MERS had the authority to transfer said right to [a securitization trust]").  Nor does the fact that Fremont was allegedly bankrupt or defunct at the time of the assignment affect this conclusion.  See Ghuman v. Wells Fargo Bank, N.A., 1:12-CV-00902-AWI, 2013 WL 552097, at *6 (E.D. Cal. Feb. 13, 2013) (dismissing plaintiffs' wrongful foreclosure claim premised on the theory that "'Defendant NDeX is not the present trustee under Plaintiffs' Deed of Trust and has no legal authority to act as trustee' . . . because MERS assigned the Deed of Trust when the Lender was already defunct" on the grounds that the "nominee of a lender broad powers to act, with or without consent from the lender").

Since the premise of Plaintiffs' wrongful foreclosure claim is barred by established law, Plaintiffs' second cause of action must be DISMISSED WITH PREJUDICE.

### III. TILA

In the FAC, Plaintiffs re-allege that Defendants failed to send them notices of the December 23, 2009 and January 19, 2012 sale or transfer of the loan within 30 days of the date of the transaction in violation of 15 U.S.C. § 1641(g).  (FAC ¶¶ 102-107.)  The Court dismissed with prejudice this claim insofar as it was premised on the December 23, 2009 transfer because it is time-barred.  (Order at 11.)  The Court therefore only considers this claim to the extent it is based on the January 19, 2012 assignment.

15 U.S.C. § 1641(g) provides:

> "In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—
> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;

>  (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>  (D) the location of the place where transfer of ownership of the debt is recorded; and
>  (E) any other relevant information regarding the new creditor."

15 U.S.C. § 1641(g). Plaintiffs allege that a violation of 15 U.S.C. § 1641(g) occurred when an Assignment of Deed of Trust was recorded on January 19, 2012 transferring the deed from HSBC in trust for ACE Series 2004-FM2 to HSBC as trustee for ACE Series 2004-FM2 "asset backed pass-through certificates." (RJN, Exh. 3.)

### a. Ocwen

By its plain language, Section 1641(g) only applies to creditors. The FAC admits that Ocwen is the servicer of Plaintiffs' loan, not the creditor. (FAC ¶ 8.) Accordingly, Plaintiffs cannot state a claim under Section 1641(g) against Ocwen. See Che v. Aurora Loan Servs., LLC, 847 F. Supp. 2d 1205, 1209 (C.D. Cal. 2012) ("As a loan servicer who never owned Ms. Che's loan, Aurora is not liable for a violation of § 1641(g)."); Jacobsen v. Aurora Loan Servs., LLC, C 12-0135 RS, 2012 WL 3257665, at *5 (N.D. Cal. Aug. 8, 2012) ("Aurora has shown that it merely became a *servicer* of the loan, and therefore no duty to notify under § 1641(g) was triggered."); see also 12 CFR § 226.39(a)(1) ("[A] servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.").

The Court therefore DISMISSES the TILA claim against Ocwen WITH PREJUDICE.

### b. HSBC

The TILA claim against HSBC also fails because Plaintiffs have not pleaded any actual damages resulting from the alleged lack of notice. Plaintiffs must allege that they detrimentally relied on HSBC's failure to disclose the transfer of the loan. See Derusseau v. Bank of Am., N.A., No. 11 CV 1766 MMA (JMA), 2012 WL 1059928, at *4 (S.D. Cal. Mar. 28, 2012) (citing, inter alia, Gold Country Lenders v. Smith (In re Smith), 289 F.3d 1155, 1157 (9th Cir. 2002) (per curiam)). Here, the January 19, 2012 assignment merely transferred the loan from one investor pool to another. (RJN, Exh. 3.) HSBC, as trustee for ACE, remained the creditor both before and after the transfer. Thus, it appears implausible that Plaintiffs could have suffered any damages resulting from a transfer which did not affect the holder of the loan. Despite Plaintiffs' contrary contention, the assignment reveals that Plaintiffs were not "paying the wrong party for an undetermined amount of time." (FAC ¶ 34.) Plaintiffs' vague and conclusory allegations regarding damages are insufficient to survive a motion to dismiss. Just like the plaintiff in Diaz v. BSI Fin. Servs., Inc., CV 12-01461 GAF EX, 2012 WL 2031251 (C.D. Cal. June 5, 2012), here, Plaintiffs also

> "allege[] only vaguely that [they] *may* have made mortgage payments in an unspecified amount to the wrong entity for an unspecified period of time, and she does not allege that

>she made or attempted to make *any* payments after the loan was transferred . . . . In addition, Plaintiff[s] still do[] not specify any erroneous finance or interest charges incurred as a result of the misinformation she had regarding the identity of the owner of her loan. Moreover, given the magnitude of Plaintiff[s'] default as of [February 13, 2012],[they] cannot plausibly allege that [they] would have avoided foreclosure if only [they] had known [of the new investor pool]."

Id. at *4. Because Plaintiffs cannot plausibly plead any actual, non-speculative damages resulting from the transfer and Plaintiffs have already failed to amend this claim once, Plaintiffs' TILA claim against HSBC must be DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DISMISSES the First Amended Complaint WITH PREJUDICE. The Court orders that such judgment be entered.

**IT IS SO ORDERED.**